478 A.2d 863

COMMONWEALTH of Pennsylvania

v.

Richard SANTANA, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 23, 1984.

Filed July 13, 1984.

428

Stephen P. Gallagher, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, MONTEMURO and MONTGOMERY, JJ.

WICKERSHAM, Judge:

On July 8, 1977, appellant, Richard Santana, was arrested and charged with criminal conspiracy[1] and theft by receiving stolen property; and thereafter moved to have certain physical evidence suppressed, which motion was denied on December 8, 1977 by the Honorable Abraham J. Gafni.[2] After waiving a jury trial, the appellant was found guilty of both charges by the Honorable Marvin R. Halbert on April 5, 1978. On January 3, 1979, Judge Halbert

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1, as amended, Act of April 28, 1978, P.L. 202, No. 53, § 7(2), 18 Pa.C.S. § 903.

2. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 3925. The appellant had automatic standing to maintain a motion to suppress. In *Commonwealth v. Sell,* 504 Pa. 46, ——, 470 A.2d 457, 469 (1983), our supreme court said:

granted appellant's motion in arrest of judgment on the conspiracy conviction, but denied any post-verdict relief on the theft by receiving stolen property conviction. Appellant was then sentenced to six (6) to twenty-three (23) months imprisonment. This appeal timely followed.

In this appeal, appellant challenges the suppression court's ruling that the police officers had probable cause to effect a warrantless arrest and search and that, therefore, the seizure of the physical evidence (air conditioners) was entirely proper. Specifically, appellant states the issues as follows:

1. Whether the suppression court erred in refusing to suppress physical evidence seized in a private residence at night without a warrant in violation of the fourth amendment protections against unreasonable search and seizures.

2. Whether the suppression court erred in refusing to suppress physical evidence seized without probable cause and without a warrant in violation of the fourth amendment.

Brief for Appellant at 2.

We must examine the circumstances surrounding the crime and the subsequent search and arrest in order to

In the instant case, appellant was charged with receiving stolen property, 18 Pa.C.S. § 3925. That offense is defined in the Crimes Code as follows:

(a) Offense defined.—A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

(b) Definition.—As used in this section the word "receiving" means acquiring possession, control or title, or lending on the security of the property.

18 Pa.C.S. § 3925.

From the definition of "receiving" in section 3925(b), it is clear that possession is an essential element of the crime charged herein. *See also Commonwealth v. Scudder*, 490 Pa. 415, 416 A.2d 1003 (1980); *Commonwealth v. Peluso*, 481 Pa. 641, 393 A.2d 344 (1978). We therefore conclude that appellant is entitled to "automatic standing" under Article I, section 8 of the Pennsylvania Constitution to maintain a motion to suppress.

determine whether the police officers' actions were proper. At approximately 8:30 p.m. on July 8, 1977, Officer Wayne Schmidt and Officer John Dzara, of the Philadelphia Police Department, were patrolling the 900 block of Marshall Street in an unmarked vehicle when they heard a burglar alarm go off. The two plain-clothesmen exited their vehicle and began checking the stores in the immediate vicinity. During this search, the officers received a message over their portable radio indicating that there was a burglary in progress at 921 North Sixth Street. As the officers looked toward Sixth Street (one block away from Marshall), they observed "three Spanish males coming from a vacant lot, carrying air conditioners." N.T. at 16. Officer Schmidt testified that he saw appellant and another male carrying an air conditioner and standing outside a residence at 917 North Sixth Street. The third man had an air conditioner in his hands and was going up the stairs and into the residence at the aforementioned address.

As a result of another radio call, the officers drove around to 921 North Sixth Street, which is adjacent to the vacant lot, and found that the front door to the Hahnemann Medical Center was broken. The lock was hanging and the door jam was apart. After observing the front of the building, Officer Schmidt walked along the side of the structure, through the vacant lot, and towards the rear of the building. At this time, he observed three windows which were covered by a large metal screen. Holes were cut in the windows and alongside the metal screen were parts of broken air conditioner vents hanging from the window frames. All three windows were on the first floor, street level.

Thereafter, the two officers walked over to and knocked on the door at 917 North Sixth Street, which is the house on the other side of the vacant lot and the residence into which appellant and the other two males were observed carrying the air conditioners. The door was opened by a small child and the officers could see an air conditioner lying on the floor of the hallway. The officers identified themselves,

and appellant's brother, Efran, one of the three males who was observed earlier carrying the air conditioners, ran upstairs. Officer Dzara pursued Efran upstairs and arrested him along with Albert Santana, another brother of appellant, who was about to take a bath in the second floor bathroom. Also, a second air conditioner was located upstairs and confiscated by the police. During this time, Officer Schmidt checked the first floor bathroom and found appellant washing his hands. He also was arrested.

The appellant moved to have the air conditioners suppressed. The suppression court denied the motion, and gave the following explanation for the denial:

> [T]he officers in the opinion of this Court had probable cause to believe that a crime had been committed having heard the scene, the broken lock, the missing area of the air conditioners and had probable cause to believe that the individuals who had committed this crime were the individuals who were in fact seen in the immediate vicinity at that time when the burglar alarm was going on which they heard, carrying air conditioners into 917 North Sixth Street.
>
> Having had that reason to believe that the crime had been committed and these were the individuals who were in fact committing the crime, they had the right under those circumstances to follow these individuals into their home to arrest them and in fact to seize the evidence under the circumstances.
>
> The Court would therefore find that the actions of the police in this matter were lawful and as a result the motion to suppress is to be denied both with respect to the arrest and seizure of evidence pursuant to that search and arrest.

Addendum to lower ct. op.

Appellant's argument is two-fold: (1) the police officers were required to secure a warrant prior to the arrest and search; and (2) even were a warrant not required, there was not sufficient probable cause to justify the arrest and search.

432

▮▮▮ Appellant's first argument is that the physical evidence (the air conditioners) should have been suppressed because they were the fruits of an illegal arrest, *i.e.,* a warrantless arrest in his home absent exigent circumstances, and thus violative of the Pennsylvania Supreme Court's decision in *Commonwealth v. Williams,* 483 Pa. 293, 396 A.2d 1177 (1978). In *Commonwealth v. Miller,* 490 Pa. 457, 417 A.2d 128 (1980), however, our supreme court held that *Williams* would not be applied retroactively, but would apply only to arrests made subsequent to the date of the *Williams* decision, November 18, 1978. *See Commonwealth v. Norris,* 305 Pa.Super. 206, 451 A.2d 494 (1982). Instantly, appellant was arrested on July 8, 1977, almost one and one-half years before *Williams* was handed down. In light of the *Miller* holding, the appellant cannot seek the protections afforded by the *Williams* decision.[3] *See Norris, supra.*

**3.** Even if we were required to apply the *Williams* criteria, we would hold that the officers' actions did not violate the protections afforded by that decision.

In *Williams,* the supreme court enumerated the following considerations in determining whether exigent circumstances existed: (1) whether a grave offense was involved, particularly one of violence; (2) whether the suspect was reasonably believed to be armed; (3) whether there was a clear showing of probable cause, rather than a minimal showing of probable cause, to believe the suspect committed the crime; (4) whether there was strong reason to believe the suspect was on the premises being entered; (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended; (6) whether the entry was made peaceably; and (7) whether the entry was during the daylight or nighttime hours.

*Commonwealth v. Pytak,* 278 Pa.Super. 476, 486, 420 A.2d 640, 645 (1980).

Instantly, although the crime was not violent, it was a serious offense. As further explained in the opinion, the officers clearly had probable cause to believe that appellant and his brothers committed the crime. The officers knew that appellant was on the premises as they had observed him going into the residence. The officers knocked and identified themselves and thus made a peaceable entry. The arrest took place at approximately 8:30 p.m. on July 8. Although this was obviously not during the daytime, the entry did not occur in the middle of the night either.

We believe that a balancing of all the relevant factors indicates that there were exigent circumstances that permitted the officers to effect

■ Appellant further contends that his arrest and the subsequent search and seizure were illegal because the police lacked probable cause. We disagree. The officers were first alerted to a crime in the area by the sound of a burglar alarm. When they went to investigate, they observed three males carrying two air conditioners into a residence at 917 North Sixth Street. The officers were informed through a radio transmission that there was a burglary at 921 North Sixth Street. The officers proceeded to that building and noticed that the front door had obviously been forced open. Further investigation established that holes were cut into three of the first floor windows. Broken air conditioner vents were hanging from the window frames. The officers then proceeded to 917 North Sixth Street, the residence into which appellant and his brothers had carried the air conditioners. They knocked and the door was opened for them. They identified themselves as police officers and appellant's brother Efran fled upstairs. They also observed an air conditioner in plain view in the hallway.

These factual circumstances support a finding of probable cause. Upon viewing the windows from which air conditioners had obviously been removed, the officers had probable cause to believe that a crime had been committed and that the individuals who they had seen earlier had, in fact, committed it. Thus, the officers were justified in going to 917 North Sixth Street to investigate. We note that the officers acted reasonably in knocking at the door and identifying themselves. When the door was opened they observed an air conditioner in plain view on the hallway floor. Also, one of appellant's brothers fled upstairs. Clearly, the combination of the officers' observations at 921 North Sixth Street and the observation of the air conditioner in appellant's home, together with Efran's flight, was sufficient to establish probable cause to arrest appellant and his two cohorts. Thus, we find that appellant's war-

an arrest of appellant in his home without a warrant. Thus, *Williams* was not violated.

rantless arrest was based upon probable cause and, was, therefore, valid. Since appellant's arrest was valid, the air conditioners seized during the search were admissible evidence.

Judgment of sentence affirmed.